

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAMON RAUDEL CAMPOS MURILLO<br>Alias Raudel<br>Alias Chilango | CASE NUMBER 1:11cr578<br><br>**AFFIDAVIT IN SUPPORT OF<br>REQUEST FOR EXTRADITION** |

I, Christopher Villarreal, being duly sworn, depose and state:

1. I reside in the United States of America.

2. I am currently employed as a Special Agent with United States Homeland Security Investigations ("HSI") and have been so employed since 2010. I am currently assigned to HSI's Washington, D.C. Office.

3. During my time as an HSI Special Agent, I have been assigned to investigate violations of United States federal sex trafficking and alien smuggling laws. As an HSI Special Agent, I have personally conducted and participated in investigations that have resulted in the arrests and convictions of numerous individuals responsible for sex trafficking, forced labor, alien smuggling, and other violations of federal criminal laws.

4. Based on my training and experience as an HSI Special Agent, I am familiar with the means and methods that sex traffickers use to recruit and coerce young women into prostitution and how they smuggle them into the United States. I am also familiar with the support and assistance that these criminal organizations require to conduct their illegal activities. I also have become knowledgeable about the criminal statutes of the United States, particularly in the area of sex trafficking, alien smuggling, money laundering, and conspiracy to violate those laws.

1

5. I am one of the special agents assigned to this case, which involved an investigation of a sex trafficking organization led by RAMON RAUDEL CAMPOS MURILLO (hereinafter CAMPOS MURILLO). The investigation revealed CAMPOS MURILLO and co-conspirators were involved in a conspiracy to smuggle young women from Mexico into the United States and then transport them within the United States to engage in prostitution. I am familiar with the charges and the evidence in the case against CAMPOS MURILLO. This evidence includes information obtained from witnesses, documents, and other sources.

6. The facts of this affidavit are based upon my first-hand knowledge, conversations I have had with other law enforcement officers involved in this investigation, and with cooperating witnesses, as well as my review of the documentary and physical evidence. The following is merely a summary of the evidence obtained during this investigation and does not reflect my entire knowledge of the investigation. In addition, the evidence discussed in this affidavit does not represent all the evidence collected during the investigation.

## SUMMARY OF THE EVIDENCE

7. In 2010, HSI initiated an investigation into a sex trafficking organization with ties to MS-13 operating in Maryland and Virginia. The members of the sex trafficking organization transported females and juvenile females across state lines for the purpose of having the females engage in prostitution.

8. In 2010, HSI arrested members of the sex trafficking organization, who in turn identified CAMPOS MURILLO as the leader of the trafficking organization. Female prostitutes employed by the sex trafficking organization also identified CAMPOS MURILLO as having previously transported them from Maryland to Virginia for the purpose of engaging in prostitution activity.

2

9. On September 8, 2010, HSI and Fairfax County Police Department investigators interviewed female trafficking victim, E.A. E.A. was born on August 30, 1993 and, at the time of the interview, was under the age of eighteen.

10. E.A. stated she had previously worked as a prostitute for CAMPOS MURILLO, whom she knew as "Raudel." E.A. stated that she had met CAMPOS MURILLO at the Julito's nightclub in Maryland. Shortly after meeting CAMPOS MURILLO, E.A. started to work for him as a prostitute. E.A. stated that she was pushed into working as a prostitute by MS-13 gang members. She was raped by two different MS-13 gang members, once at knifepoint.

11. E.A. stated she was initially assigned to work as a prostitute in Woodbridge, Virginia. E.A. stated she would call CAMPOS MURILLO at the start of each week and that CAMPOS MURILLO would assign her to a driver. E.A. stated that the driver would take her from her home in Maryland to meet with clients in Virginia. E.A. stated she would charge $30 U.S. dollars (USD) for fifteen minutes of sexual intercourse. E.A. stated she would split her earnings with the prostitution ring. The prostitution ring would not give her share to her until the end of each week, to ensure that she worked the whole week. E.A. stated that she had previously worked for individuals known by the aliases "Cubano" and "Castor." "Cubano" is known to law enforcement as Juan Fernando Munoz Vasquez (hereinafter Munoz Vasquez). "Castor" is known to law enforcement as Miguel Santiago Ramirez (hereinafter Santiago Ramirez).

12. On September 15, 2010, HSI interviewed Munoz Vasquez. During the interview, Munoz Vasquez admitted to operating an interstate prostitution ring. Munoz Vasquez stated that the prostitution ring would transport female prostitutes from Maryland to Virginia. Munoz

Vasquez stated the purpose of transporting the female prostitutes across state lines was so the female prostitutes could have sex with male clients in exchange for money. Munoz Vasquez stated he had previously worked for an interstate prostitution ring run by CAMPOS MURILLO, whom he knew as Raudel. Munoz Vasquez stated he and CAMPOS MURILLO would arrange for female prostitutes to cross state lines for the prostitutes to have sex with male clients for money.

13. On October 14, 2010, HSI interviewed Santiago Ramirez. During the interview, Santiago Ramirez admitted to operating an interstate prostitution ring. Santiago Ramirez stated the prostitution ring would transport female prostitutes from Maryland to Virginia. Santiago Ramirez stated the prostitution ring also transported prostitutes from New York and New Jersey to work in Maryland and Delaware. Santiago Ramirez stated the purpose of transporting the female prostitutes across state lines was so the female prostitutes could have sex with male clients in exchange for money. Santiago Ramirez stated that CAMPOS MURILLO, whom he knew as Raudel, was the head of the prostitution ring. Santiago Ramirez stated CAMPOS MURILLO arranged for female prostitutes to meet with male clients. Santiago Ramirez stated that CAMPOS MURILLO set the rates for each prostitute and collected earnings from the prostitutes and the individuals transporting the prostitutes to the various clients. Santiago Ramirez stated he had purchased CAMPOS MURILLO's share of the prostitution ring after Munoz Vasquez was arrested by federal agents in September of 2010. Santiago Ramirez stated CAMPOS MURILLO fled to Mexico to avoid arrest after Munoz Vasquez was arrested.

## Statement of Gennys Rivera, alias G.R.

14. During the course of the investigation, law enforcement authorities identified a witness named Gennys Rivera (hereinafter Rivera or G.R. in the indictment. According to Rivera, she started working as a prostitute for CAMPOS MURILLO, whom she knew as Raudel, sometime in 2010. Rivera knew CAMPOS MURILLO to be involved in the operation of a prostitution organization that covers the mid-Atlantic region of the United States.

15. Rivera stated that she had sex with male clients for money at CAMPOS MURILLO's direction.

16. According to Rivera, CAMPOS MURILLO assigned her to a driver who would drive her across state lines to have sex with male clients in exchange for money. In most cases, she was assigned a different driver each week. Rivera said that the drivers transported her from Maryland to Virginia to work as a prostitute. One driver transported her from Prince George's County, Maryland, across the Woodrow Wilson Bridge, into Virginia. She stated that she worked as a prostitute for CAMPOS MURILLO's organization in Alexandria City, Arlington County, and Fairfax County, Virginia; Prince Georges County, Maryland; and Delaware.

17. Rivera further stated that CAMPOS MURILLO previously employed several of her friends, and that CAMPOS MURILLO sold her and other prostitutes condoms prior to meeting with clients.

18. Rivera said that CAMPOS MURILLO took half of the money she earned while working as a prostitute.

19. CAMPOS MURILLO told Rivera that he was "the boss." According to Rivera, CAMPOS MURILLO threatened female prostitutes who attempted to leave his prostitution ring to

start their own prostitution rings. The drivers who were assigned to Rivera reported to CAMPOS MURILLO.

20. According to Rivera, some of the prostitutes that CAMPOS MURILLO hired were citizens of Mexico and some, such as herself, were citizens of the United States.

21. Rivera further stated that she witnessed CAMPOS MURILLO hold meetings where he paid drivers, prostitutes, and gang members who provided his organization with new prostitutes and protection.

## **IDENTIFICATION**

22. RAMON RAUDEL CAMPOS MURILLO, alias Raudel, alias Chilango, is a Mexican citizen, born in Mexico on August 13, 1977. He is described as a Hispanic male, standing approximately 5 feet 6 inches in height and weighing approximately 200 pounds, with black hair and brown eyes. Attached to this affidavit as **Attachment D-1** is a photograph of CAMPOS MURILLO. Gennys Rivera has identified this photograph as being that of CAMPOS MURILLO.

Christopher Villarreal
Special Agent
U.S. Homeland Security Investigations

SWORN AND SUBSCRIBED TO BEFORE ME
THIS 25th DAY OF APRIL, 2019.

HON. THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF VIRGINIA